Good morning, Your Honors. Patricia Glazer for Televisa, if it please the Court. In the case before Your Honors that I'm here to argue about, the parties agreed to litigate the claims related to Televisa's blackout obligations. In Mexican courts, under Mexican law, the parties applied Mexican law rather than under in a California arbitration, applying California law. That's not what the agreement says, that's what you're telling us? No, Your Honor, I respectfully disintegrate, that is not accurate. Where does it say that? The letter agreement could not be clearer. It specifically and I would point out to the Court, it's in page of the record, ER 1254. Is that letter the complete agreement of the parties? On the issue of blackout. Is it the complete agreement of the parties? No, Your Honor. As to the transaction we're talking about? It is not. Okay. So we have to look at the whole thing, not just one piece of it, right? I do agree with Your Honor. There are three pieces. Correct. Okay. And there are They wind up with different standards and different documents, right? Different forums and different law. Litigate if you get to a problem where litigation is inevitable. Different – there's not a different standard for the provisions of the blackout, which is the only thing that's being disputed here. The only thing that's being disputed here. And that specifically is covered by paragraph 8.4, which is in ER 114. It could not be clearer. The parties have agreed, Direct TV has conceded that the issues that must be resolved in this fight are about the blackout provisions. Does it say anything about not going to arbitration? Your Honor, you are correct. It doesn't. I'm just driving at it. What it does clearly say is all disputes related to or arising out of the obligations of Televisa hereunder must go to Mexican courts under Mexican law. So you think that's a revocation portanto of the arbitration agreement tacitly? I absolutely do. I think it's an express intention of the parties that the blackout provisions I'm not talking about everything covered by the arbitration provision in the sublicense agreement, but the blackout provision, somebody sat back and said, with respect to a dispute regarding the blackout, that dispute and only that dispute would be handled under 8.4, and I don't think the parties could have been clearer. Well, they could have been clearer if they'd said but not go to arbitration for those disputes. Don't you think what really happened is they'd forgotten about the other agreement and they just didn't realize they already had an all-encompassing arbitration agreement? I do not, Your Honor, and I think it couldn't be clearer from the language here. They were both dated April 18, as the Court will, I'm sure, recognize, and in connection with both provisions, they were both on the same day. I believe that the same parties were negotiating. I don't think there's any evidence in the record to the contrary. They were – I can see they were negotiating at the same time. I don't think it was an oversight at all. I think with respect to when it was only about the blackout provisions, there was going to be one place this could be resolved and only one place. Don't you think that there's a way in which the two agreements can be accommodated? That is, that there's a – this letter agreement is limited to non-arbitrable disputes. I think, respectfully, Your Honor, that's intellectual bootstrapping. I think the district court did it. I think it was, to use a parochial or provincial expression, the district court cheated in that regard by intellectually bootstrapping. What it said is – and by the way, while I think you can distinguish the Fifth Circuit case that everybody refers to, I think they did a bunch of intellectual bootstrapping as well. But here it says all disputes. It doesn't say the kind of words and the verbiage that goes to disputes only before a court. It says all disputes. All disputes related to or arising out of the obligations of Televisa hereunder. That reason alone distinguishes it from the personal security case. But even if you adopted the personal security case in Prinater, which we do not, but we will for purposes of this argument, you can distinguish this case from personal security. I believe the parties – and let me be as specific as I can. There's a California Code of Civil Procedure section, which is not mentioned in the briefs, for which you can beat me up about, but you can – and also Witkin. In the California Code, 1849 of the California Code of Civil Procedure, when a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it. I think – I believe everybody has to concede that these are inconsistent provisions. Well, are they inconsistent? Couldn't you say that this letter agreement makes two provisions? Number one, it establishes the governing substantive law. It's a choice of law provision, clearly. It also says that the parties submit themselves to the jurisdiction of the court in Mexico. That would be if they had to – if either party were to seek review of an arbitration award. So the two provisions could be reconciled if you were to construe this as a choice of law provision and a provision that governs jurisdiction of courts to review the arbitration award. Respectfully, Your Honor, I think it's a misreading of the provision. I think 8.4 could not be clearer in that regard. 8.4 says quite clearly, and I'm quoting, for any – I'll follow you. Okay. Pardon me. Thank you. It couldn't be clearer that it talks about the interpretation, the fulfillment, the judicial requirement of the obligations of Televiso here to – it doesn't say – Okay. Okay. I understand. But then it goes on to say, shall be governed and construed in accordance with the applicable laws of Mexico. Correct. That's clearly a choice of law provision, which says nothing about whether it's  Then the next part says they submit themselves to the jurisdiction of the court of Mexico. Expressly and irrevocably. Well, all right. I'll grant you that. And then it goes one step further. It says, just in case you weren't clear after you read the first sentence of this paragraph, you go to the second sentence. Somebody referred to it as belts and suspenders in the lower court. I believe it's far broader than that, Your Honor. It says all disputes related to or arising out of the obligations of Televisa here under. And I want to point out something else. In the sublicense agreement, the word, quote, agreement, in this case the sublicense agreement, is a defined term, as is there is a specific reference to this side letter, this letter agreement. And it's a separate agreement. So if you want to read these as literally as the court seems to be inclined to do it, then you, in our view, have to go with us. Because our view is, if you look at each particular phrase and give everything meaning, everything meaning, this arbitration provision applies to things in the sublicense agreement. And the, and nobody disputes that. But there is, somebody said, well, let's, wait a minute, when there's only two parties involved, not Azteca, Televisa, and direct television, and it's going to be about the blackout dispute, the blackout dispute is only going to be determined in Mexico under Mexican law. And I believe that is very specifically set forth, Your Honors. I do believe that the two, there are forum selection provisions that compete. But again, I harken back to California law, which couldn't be clearer. When one's general and one's specific, you go with the specific, especially if they are arguably inconsistent. Witkin supports that proposition. Specifically, Witkin does and discusses the code section. Kennedy, you have a bootstrap argument. Aren't there also provisions that say when you have two provisions in contracts, you should try to interpret them so as to be consistent rather than conflicting? Generally, that's correct. But here, there is a provision in this particular contract that says, just about blackouts, nothing else, just about blackouts between these two parties, not Azteca, you must go to Mexican courts. And I frankly, Your Honor That's the way you read it. I don't think it's quite as specific. But doesn't the sublicense agreement also deal with blackouts? What it does is, it refers to this side letter, and it does absolutely, in paragraph 6.6, it does do that. But if you give it the meaning that the district court did, respectfully, I say this because I have a great deal of respect for her. If you give it that meaning, you read this out entirely. It has no meaning whatsoever other than if you go to the personal security case, and it says, personal security seems to stand for the proposition. Well, you could, the Texas courts could still look to see if, well, maybe if it was subject to arbitration at all, or the arbitration provision were applicable or enforceable. Your Honor, that's respectfully, that's cheating. That is not what that provision says. This, just like here, in this case, in this provision, it says all disputes will be resolved about blackout. And we're in all disputes in this provision. Your Honor, if you look at the- Where am I looking? Fifth line down at 8.4. Do you see where it says- I see where you're looking, all right. And it relates to waiving jurisdiction to which they might be entitled due to the present and future domiciles, which has a kind of a ring of venue in personal jurisdiction rather than arbitration. Your Honor, it could not be clear when it says irrevocably waiving any other jurisdiction to which they might be entitled due to their present or future domiciles. So they're saying, just in case we weren't clear, even if they change domiciles, whatever they may be, today, when we sign this on April 18th, even if you change the domiciles, all disputes regarding blackouts are going to be decided in Mexican courts under Mexican law. That's what the parties agreed to. And, Your Honor, frankly, I do believe it could not be clear. Now, your point, which is a fair point, obviously, is that, well, why didn't they just say, this is not going to be arbitrated like everything else? In a perfect world, maybe they should have. But because it was negotiated on the same day, and because it only pertains to blackouts, and because it is as broad as it is, Your Honor, respectfully, I don't believe you could come to any other reasonable conclusion than with respect to the blackout dispute. Not this dispute, but this dispute. When that happens, everything must be decided under Mexican law in a Mexican court. Now, I understand that there is a policy, which I do not argue with at all, in federal courts and state courts as well, that if you can sort of err on the side of causing something to be arbitrated, it should be arbitrated. But here, when there is an express intention that blackout disputes do not get litigated anywhere other than in Mexican courts under Mexican law, I think the court is bound to come to a conclusion that this particular dispute must be decided in Mexico. I think it's a fact of comedy. I think it's a sign of respect for the party's choice, but as well as a Mexican court. This is not a country that doesn't have a system of laws, not exactly like America, but a system of laws that both parties recognized was a fair place to resolve this dispute. Your Honor, I would like to reserve the rest of my time for rebuttal if that is satisfactory. Before you sit down, let me call your attention to 52.1. I'm sorry, Your Honor? 42.1, excerpt to record, page 52. It's a provision stating governing law arbitration. Says this agreement shall be governed by and constitute in accordance with the laws of the state of California, provided that with respect to any matter involving only licensor and licensee, the agreement shall be governed by and constitute in accordance with the laws of the District of Mexico, applicable to contracts made fully performed, except in either case to the extent that the party's respective rights and obligations are subject to mandatory provisions, et cetera. So this apparently incorporates the law of Mexico in the choice of law clause with respect to disputes between the sub-licensor and Televisa, right? Well, no, between Esteca, the licensor. Oh, I see. Okay, so they knew how to do that. They did, but that wasn't it. It has no bearing on your issue. Correct, in our view, Your Honor. Okay. Yes, sir. Good morning, Your Honor, and Your Honors, and thank you very much for accommodating our error in the disclosure statement issue. I would like to focus on that clause that my worthy opponent focused on, and that's at excerpts of the record, page 114. That's the letter agreement jurisdictional clause. I think that my opponent has misread this clause. The phrase irrevocably waiving any other jurisdiction to which they may be entitled applies only to an argument based upon domicile. And according to the record, there's two domiciles at stake, and that's excerpts of the record, too. The two domiciles at stake are Mexico and Florida. And what this clause does is it says we will waive any jurisdictional argument based upon our domiciles, that is, Florida and Mexico. Now, my opponent has referred to the phrase for all disputes related to or arising out of the obligations of Televisa hereunder. That qualifies the domicile clause, not the rest of the paragraph, under the doctrine of ad justem generis, if a specific clause is followed by a general statement. The general statement only modifies the specific clause. And if you look at the words for all disputes related to or arising out of the obligations of Televisa hereunder, to construe it otherwise would be to really change the meaning of the first part of 8.4, that is, for any aspect herein related to the interpretation, fulfillment, and judicial requirement. So I think my opponent is reading more into the phrase for all disputes relating to or arising out of the obligations of Televisa hereunder. I think she's reading more into it than is there, especially under the doctrine of ad justem generis. But I also would point out that there is no reported appellate decision in the United of a direct conflict. If you enforce the arbitration clause, what's left of 8.4? The very same thing that was left in personal security. And in personal security, the statement in personal security was the following. And I read from page 396 of personal security. Rather than, this limitation suggests that the parties intended the clause to apply only in the event of a non-arbitrable dispute that must be litigated in court. For example, a suit to challenge the validity of the application of the arbitration clause or an action to enforce an arbitration award. So they went to the wrong court in the first place. They went to the Central District of California when instead they should have gone to the Mexican court to challenge the application of the arbitration clause. And that's what's left in 8.4. And we know that the Federal Arbitration Act puts extraordinary strictures upon a federal court's interpretation of an arbitration clause. And I cite to Section 2 of Title IX of the United States Code. And in Section 2 of that code it says, an arbitration clause shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity to the revocation of a contract. So in the first sense they say it's irrevocable. In the second sense they say, unless you have evidence that it's been revoked. Which is an interesting way to draft the statute. But the way the cases have interpreted that is that the only way if there are competing clauses, and let's say, and I don't say that these clauses are competing. And before I sit down I'll explain why they're not competing. But let's say these clauses are competing. What happens? Well, if the clauses are competing, then the only way an exclusive jurisdiction clause would trump an arbitration clause is if it expressly mentioned arbitration. And both personal security, that's the Fifth Circuit, and patent securities, which is the Third Circuit, says that. Patent security says at page 407, and I'm just quoting a phrase, conspicuously absent from the forum selection clause is any reference to arbitration whatsoever. And personal security, it says, there is no clause which expressly forbids arbitration of claims arising under the stock purchase agreement. So in this case, there is just no express mention of arbitration. Now, I understand my opponent's argument, and that is, well, you don't need to have an express revocation of the arbitration clause. You can implicitly do that, which is contrary to the two cases I've mentioned. But you can implicitly do that if you say everything under the sun, all disputes, everything having to do with this clause or this agreement is to be litigated in a court of general jurisdiction. The problem with that argument is, again, it runs contrary to the two reported circuit decisions, but it isn't supported by Section 8.4, because that phrase, for all disputes related to or arising out of the obligations of Televisa hereunder, modifies the phrase irrevocably waiving the domicile jurisdiction, and it doesn't modify anything else. And so what that means is that Section 8.4 is not really an exclusive jurisdiction clause in the letter agreement, except for domicile waiver. Does it matter that the parties to the letter agreement are not the same parties as the parties to the sub-license agreement? There are three parties on the sub-license agreement. Now, Azteca dropped out on the, is not involved in the letter agreement. So does that perhaps suggest that this is a different agreement that they intended to approach the problem in a different way because Azteca is not involved? According to the reported decisions, that is a factor that would tend to militate against my argument. That is correct. But the reported decisions do involve multiple parties at various times. But in this case, you've got, the reason why Azteca is in the sub-license agreement is because they hold rights that must be bound to Televisa when Televisa gets its own license. That's the only reason they're there. But the person who's going to be doing the blackout obligation that's required by the sub-license is going to be Televisa. Because Televisa didn't get all the rights that Azteca got. They only got a subset of the rights that Azteca had. And so there was no reason to have Azteca in the sub-license agreement. But the distinction is really without any difference whatsoever, because Televisa specifically agreed to arbitrate. And the arbitration clause, I think, says a lot about its intentions. And I refer to, for instance, excerpt of the record 55, which Televisa signed. And in clause, in section 22.2.8, after two, three pages of text about the arbitration clause, the parties then threw in a final comment. The parties agree that reliance upon courts of law and the process of resolving disputes. Accordingly, they recognize that an essence of this agreement is to provide for the submission of all arbitrable disputes to binding arbitration. And all arbitrable disputes were all disputes under the agreement. And the agreement was defined as everything, including the annexes. And the annexes included the letter agreement. So if you follow the view of personal security and patent securities, unless there's really a specific statement of waiver of the arbitration clause, the arbitration clause applies. And in this case, I would submit that the clauses are not irreconcilable. Who knows really what happened during those days of the arbitration negotiation. But the court is faced with a piece of paper. And according to the reported decisions, the court can't delve too far into the merits of the matter to determine exactly what happened that day. But it can look at the pieces of paper that are before it. And according to the pieces of paper that are before it, there was a master sub-license agreement that said that Televisa only was getting the rights to broadcast on free television. That is over the air with rabbit ear antennas. That's all that they had the right to do. But Televisa also had an affiliation with a satellite network. And according to the license agreement, sub-license agreement, DirecTV and Azteca wanted to make sure that Televisa didn't bleed that feed over into the competing satellite network. DirecTV was a satellite network. It had no free TV. It did not want any of that to go to its competitor. And so according to the sub-license agreement, that was, Televisa was just given the rights to free television. And the sub-license agreement says, and you're going to be responsible for making sure that that's all you get. And then the blackout agreement is specified in the side letter. And in the side letter it says, here is how we are going to implement the sub-license agreement. And here are the steps we're going to take to ensure that. And that's contained in pages 109 and 110 of the excerpt. And 109 says that neither the TV-Azteca agreement nor the Televisa agreement, if any, shall authorize any telecast of all or a portion of the matches or licensed matches via any other form of television distribution defined below other than free terrestrial television. So the mechanics of the blackout agreement, or the mechanics of that, are set forth in the side letter. And that's why the side letter is there. And the side letter then, in conclusion, basically says that if you're going to have any enforcement at all, it's going to be in the courts of Mexico. But this is not an exclusive arrangement. If it were an exclusive arrangement, it would say, the parties exclusively agree or agree to the exclusive jurisdiction of the courts of Mexico. It does not say that. And I would remind the court that the personal security decision involved an exclusive jurisdiction clause. In personal security, the competing clause, which is in the master agreement, said the parties agree to the exclusive jurisdiction of the courts of Texas. And in a subordinate agreement was found an arbitration clause. Here, we have the opposite. The arbitration clause is contained in the master agreement. And the jurisdictional clause, which is not exclusive, is contained in the inferior agreement. And so I would submit, Your Honors, that under the very strong policy reasons that govern arbitration clauses, it would be contrary to the intentions of the Federal Arbitration Act to avoid or ignore those very strong policy reasons. And I quote in conclusion from the Republic of Nicaragua case from this court in 1991, we must strictly enforce any agreement to arbitrate regardless of where found. And the court's, this court's decision in 1987 by Hena Corp versus China National Machinery, there's a quote, strong federal policy favoring arbitration. Thank you very much. If the court please, if you look at the first page of the sub-license agreement, which is ER 12, you'll see at the very top it says, this agreement is made this 18th day of April, 2002, paren, quote, agreement, end of quote, end of paren. And then if you then go to page ER 15, you'll see letter agreements is defined. Letter agreements means, and I'm quoting that certain agreement regarding the 2002 FIFA World Cup between Televisa and DTVLA, Inc. And that, and then it goes on to another thing. Your Honor, there is a, there was, there was a specific effort to delineate what was the agreement, which is going to be arbitrated, what was the side letter, what were the letter agreements, specific definitions, another indication that the parties clearly understood they were talking about two different things. It is also clear that there's a reference to an 8.4. Counsel, opposing counsel refers to 8.4, and it says, well, all disputes, quote, all disputes, only goes to this issue of domicile. But the paragraph is a paragraph that, in our view, could not be clearer. For any aspect herein related to the interpretation, fulfillment, and judicial requirement of the obligations of Televisa hereto, this letter agreement shall be governed by and construed in accordance with the applicable laws of Mexico, and Televisa and DTVLA expressly and irrevocably submit themselves to the jurisdiction of the competence and competence of the courts of Mexico City Federal District, irrevocably waiving, there's a comma, there's not a period, irrevocably waiving any other jurisdiction to which they might be entitled due to their present or future domiciles for all disputes related to or arising out of the obligations of Televisa hereunder. You know, is there a common-sense explanation on how these parties could, on the same day, have entered into an agreement with an all-encompassing arbitration clause and a lot of recitals about the importance of arbitration, at the same time enter into an annex which establishes Mexican law as the law, the governing law, and says something about jurisdiction of the Mexican courts? Does it make any sense? Yes, it does. There's no sensible explanation for what happened here. In our judgment, it does. Without going outside of the record. Without going outside the record. You have an arbitration provision that covers a whole bunch of disputes that could have developed as a result of the sublicense agreement, and you have a very limited dispute area, blackout, which is all everybody concedes is all we're fighting about here, and the blackout says when it comes to a blackout, to decide if there was a blackout or was not a blackout, or the appropriate amount of time was allocated or wasn't allocated for the blackout. You are supposed to look to Mexican courts and Mexican law to resolve it. That's a common sense, in our view, absolute way. And if they had meant something different, they could have easily said something different. That's not what was intended here. You were supposed to, one who was looking as a third party, looking into this arrangement was supposed to say, ah, if it only pertains to blackouts, it is quite clear Mexican law and Mexican court is the place to get this dispute resolved. Finally, if you do not read it our way, and I allude to something that one of your Honors mentioned in addressing opposing counsel, 8.4, contrary to what was suggested earlier in the argument, has no meaning whatsoever. You can attribute no meaning to the word all disputes. You can attribute no meaning whatsoever to the language for any aspect herein related. You can give those words no meaning, and as the Court correctly points out, you have to give meaning to every provision in a contract, whether you look at it as a whole or in pieces. Thank you very much, Your Honors. Thank you. The case just argued is submitted. The Court for this session will stand adjourned. All rise. This Court stands adjourned. This Court stands adjourned.
judges: Beezer, Kozinski, Schwarzer